# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA



**ALBERT V. PEYUS JR.,**          )
                                  )
    **Plaintiff,**          )
                                  )
    **v.**          )    **Civil Case No. 11-02087 (RJL)**
                                  )
**RAY LAHOOD,** Secretary, United States          )
Department of Transportation,          )    **FILED**
                                  )
    **Defendant.**          )    JAN 2 9 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
January 2̶8̶, 2013 [Dkt. #4]

Plaintiff Albert V. Peyus, Jr. ("plaintiff") brings this suit against the defendant Ray

Lahood, Secretary for the U.S. Department of Transportation ("defendant"), alleging

discrimination based on age and retaliation in violation of Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000(e) *et seq.*, and the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 626 *et. seq.* On March 5, 2012, the defendant

moved to dismiss the plaintiff's complaint or, in the alternative, for summary judgment

[Dkt. #4]. Upon consideration of the parties' pleadings, relevant law, and the entire

record therein, the defendant's motion is GRANTED.

## BACKGROUND

Plaintiff, a sixty-five-year-old Aviation Safety Inspector, has been employed by

the U.S. Department of Transportation's Federal Aviation Administration ("FAA") since

1996. Compl. ¶¶ 6-8, ECF No. 1. In 2007, plaintiff joined FAA's AFS-52 team and was

supervised by Marlene Livack ("Livack"), Manager of the International Operations and Standardization Branch of the AFS-52 team. *Id.* ¶¶ 9-10; Def.'s Mem. in Support of Mot. to Dismiss or, in the Alt., for Summ. J. ("Def.'s Mem.") at 1, ECF No. 4; Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss, or, in the Alt., for Summ. Judgment ("Pl.'s Opp'n"), Ex. 3, ECF No. 7.

Since plaintiff's employment with the AFS-52 team, plaintiff alleges that Livack has repeatedly and consistently discriminated against him on the basis of his age, as well as retaliated against him for filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). He points to a veritable laundry list of incidents which he claims were discriminatory or retaliatory, which include: (1) Livack's comments upon plaintiff's employment with the AFS-52 team that Livack was forced to bring him to the branch (Compl. ¶¶ 11-12); (2) on a 2009 business trip to Kenya, Livack's demand that plaintiff maintain contact or he would not be allowed to travel anymore, and Livack's criticism of plaintiff for the large telephone bill that accrued as a result (*id.* ¶¶ 13-17); (3) on May 25, 2010, Livack's reprimand of plaintiff for making her look bad by not informing her of a lack of data with regard to the International Aviation Safety Data Exchange ("IASDEx") program prior to a managers meeting, and her instruction to plaintiff thereafter to get her approval on each and every action needed to manage the program (*id.* ¶¶ 18-22); (4) Livack's nonresponse to plaintiff's request to take a class on May 16, 2010, causing him to miss the registration deadline (*id.* ¶¶ 23-24); (5) Livack's failure to sign plaintiff's travel voucher in a timely fashion, rendering plaintiff late in paying his government credit card bill (*id.* ¶¶ 32-34); (6) in June 2010, Livack's

suspension of plaintiff's government credit card, despite a death in plaintiff's family, due to late payment, which prevented him from travelling to a June 2, 2012 assignment (*id.* ¶¶ 25-31, 35-36, 38); (7) Livack's admonishment and suspension of plaintiff for late payment of his government credit card (*id.* ¶¶ 25-31, 35, 37); (8) between June 16 and June 18, 2010, Livack's threat to get rid of the plaintiff or put him in another line of work because of his inability to travel, along with plaintiff's receipt of two angry voicemail messages from Livack (*id.* ¶¶ 39-41, 43); (9) Livack's removal of plaintiff as Program Manager for IASDEx because he could no longer travel for the government without a government credit card (*id.* ¶ 42); (10) in July 2010, Livack's admonishment of plaintiff for failing to track down the original paperwork on a Safety Recommendation project (*id.* ¶¶ 55-57); (11) in August 2010, Livack's lack of response to plaintiff's need for a signature and review of a completed project, as well as her failure to acknowledge his presence (*id.* ¶¶ 61-65); (12) in late August and September 2010, Livack's failure to provide plaintiff with new assignments, and her reassignment of two programs that were previously assigned to plaintiff to younger employees (*id.* ¶¶ 66-70); (13) on September 21, 2010, Livack's assignment to plaintiff to set up a storage site for papers, briefs, power points, letters, and statements on the computer system (*id.* ¶¶ 71-72); (14) in November 2010, Livack's failure to acknowledge plaintiff's presence on multiple occasions (*id.* ¶¶ 77-78); (15) on January 6, 2011, Livack's demand for proof that plaintiff was actually volunteering with the Red Cross (*id.* ¶¶ 79-80); (16) in January and February 2011, Livack's failure to acknowledge plaintiff's presence (*id.* ¶¶ 81-82); (17) Livack's demand for an in-person discussion prior to her approval of his request for a teaching assignment

in Oklahoma City (*id.* ¶¶ 83-85); and (18) in May 2011, Livack's failure to approve a

leave slip for the plaintiff (*id.* ¶¶ 86-88).

In July 2010, plaintiff emailed the Equal Employment Opportunity ("EEO")

Counselor's office regarding the discrimination he was suffering at the hands of Livack.

*Id.* ¶ 50.  Based on his Division Manager John Barbagallo's request, however, plaintiff

agreed to try to work things out with Livack before filing a formal complaint with the

EEO Counselor, which he eventually did.  *Id.* ¶¶ 51-52; Pl.'s Opp'n, Ex. 8.  Plaintiff filed

this suit on November 21, 2011, seeking compensatory damages, a reassignment of

duties, and costs for claims of age discrimination and retaliation against the defendant.

*See generally* Compl.  The defendant filed a Motion to Dismiss or, in the Alternative, for

Summary Judgment on March 5, 2012, asking this Court to dismiss plaintiff's complaint

or grant summary judgment in its favor.  *See generally* Def.'s Mot. to Dismiss or, in the

Alt., for Summ. Judgment, ECF No. 4.  For the following reasons, the defendant's motion

is GRANTED.

## STANDARD OF REVIEW

### I.    Rule 12(b)(6)

The defendant moves to dismiss plaintiff's claims that have not been exhausted for

"failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6);

Def.'s Mem. at 8-9.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

does not need detailed factual allegations, a plaintiff's obligation to provide the grounds

of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v.*

4

*Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations and internal

quotations marks omitted). The complaint "must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "[T]he [C]ourt

need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the

facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276

(D.C. Cir. 1994). The Court may, however, consider "any documents either attached to

or incorporated in the complaint and matters of which [the court] may take judicial

notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## II.    Rule 56

The defendant here moves alternatively for summary judgment. Summary

judgment is appropriate when, based on the record, there is no genuine issue as to any

material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R.

Civ. P. 56(a); *Hussain v. Principi,* 344 F. Supp. 2d 86, 94 (D.D.C. 2004). Summary

judgment is not available, however, when there are factual disputes that may determine

the outcome of the case under the governing law or when sufficient evidence exists such

that a reasonable juror could return a verdict for the non-moving party. *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary

judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences

are to be drawn in [her] favor." *Id.* at 255.

The moving party has the initial burden of demonstrating that there is no genuine

issue of material fact to be decided with respect to any essential element of the

nonmoving party's claim. *Id.* at 263. Once that burden is met, the nonmoving party must

set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v.

Catrett*, 477 U.S. 317, 324 (1986). The nonmoving party's opposition may not rest upon

the mere allegations or denials of the pleadings, but must be supported by affidavits or

other competent evidence. *Id.* By pointing to the absence of evidence proffered by the

nonmoving party, a moving party may succeed on summary judgment. *Id.* at 322-23.

## ANALYSIS

### I.   Failure to Exhaust Administrative Remedies

As a threshold matter, defendant asserts that plaintiff failed to exhaust his

administrative remedies before filing this action with respect to age discrimination

claims[1] that stem from conduct that occurred prior to May 27, 2010. I agree.

The ADEA, which makes it unlawful for an employer to discriminate against an

employee based on age, 29 U.S.C. § 623(a)(1), provides two avenues for federal

employees aged 40 or older to assert claims. *See* 29 U.S.C. § 633a. First, an employee

can exhaust his or her administrative remedies, and if the case is not resolved

administratively, the employee can file a civil suit thereafter. *Id.* Second, the employee

can forego the administrative process, file notice of intent to sue with the Equal

Employment Opportunity Commission ("EEOC") within 180 days of the "alleged

---

[1] Although defendant claims that the conduct at issue, specifically incidents that occurred 45 days or more *before* plaintiff's meeting with an EEO Counselor, could be linked to plaintiff's retaliation claims, *see* Def.'s Mem. at 8-9, it is difficult to understand how. Indeed, the record indicates that plaintiff did not meet with an EEO Counselor until July 11, 2010, well *after* the incidents at issue took place. *See* Compl. ¶ 50; Pl.'s Opp'n, Ex. 8 at 2. Accordingly, this Court will only address plaintiff's age discrimination claims in the context of failure to exhaust.

unlawful practice," and wait thirty days before commencing suit in a United States district court. 29 U.S.C. §§ 633a(c)-(d). If an employee chooses to proceed with the administrative process first, however, the Court may dismiss those claims that were not exhausted administratively before the filing of a discrimination action. *See Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies).

In this case, plaintiff chose to pursue his administrative remedies prior to initiating suit in this Court. As part of the administrative process, employees "must initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory," 29 C.F.R. § 1614.105(a)(1), and each "discrete act" of allegedly unlawful discrimination must be administratively exhausted. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-13 (2002); *Chandler v. Bernanke*, 531 F. Supp. 2d 193, 198-99 (D.D.C. 2008); *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 137 (D.D.C. 2004). Plaintiff asserts that he contacted the EEO Counselor's office regarding the conduct and circumstances that formed the basis of his age discrimination claim on July 11, 2010. *See* Compl. ¶ 50, Pl.'s Opp'n, Ex. 8 at 2. Accordingly, all of the "discrete acts" of unlawful discrimination that occurred on or before May 27, 2010[2] cannot be considered as part of plaintiff's age discrimination claim, and are thus dismissed for failure to exhaust. *See Gordon v. Napolitano*, 786 F. Supp.2d 82, 85 (D.D.C. 2011) (holding that any discrete employment conduct occurring 45 days before plaintiff first

---

[2] *See* Compl. ¶¶ 11-24.

contacted an EEO Counselor should be deemed unexhausted and thus procedurally barred).

## II.   Age Discrimination Claim under ADEA

Plaintiff contends that the defendant violated the ADEA by taking on a discriminatory attitude toward him, as opposed to other similarly situated employees not of his age group, and that such age discrimination affected "the terms, conditions and privileges of his employment." Compl. ¶¶ 89-97. The defendant counters that it had legitimate, non-discriminatory reasons for taking the challenged actions, and that the plaintiff has failed to rebut such reasons or produce any evidence of age discrimination on the defendant's part. *See* Def.'s Mem. at 14-22. For the following reasons, I agree with the defendant.

The ADEA, which protects individuals who are at least 40 years of age, prohibits an employer from failing or refusing to hire an individual, from discharging him or her, or from other discriminating acts against the individual with respect to compensation, terms, conditions, or privileges of employment solely because of the individual's age. *See* 29 U.S.C. §§ 623(a)(1), 631(a). Because the prohibition against age discrimination contained in the ADEA is similar to the prohibition against discrimination contained in Title VII, courts routinely analyze ADEA claims under the law developed under Title VII discrimination inquiries. *See Piroty v. Chairman, Broad. Bd. of Governors*, 815 F. Supp. 2d 95, 98 (D.D.C. 2011). Until recently, under Title VII, in the absence of direct evidence of discrimination, a plaintiff could indirectly prove discrimination under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

8

*See also Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004). However, our Circuit has since simplified the district court's inquiry. *See Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008).   Under the new approach, if an employee has suffered an adverse employment action and the employer asserts a legitimate, non-discriminatory reason for the action, the Court need only determine at the summary judgment stage whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, [age], or national origin." *Id.* at 494; *see also Jones v. Bernanke*, 557 F.3d 670, 678-79 (D.C. Cir. 2009); *Piroty*, 815 F. Supp. 2d at 98.[3]

The defendant argues that the plaintiff did not suffer an adverse employment action under ADEA, and even if he did, the defendant had a legitimate, non-discriminatory reason for its challenged actions. *See* Def.'s Mem. at 12-22.  To be considered an "adverse employment action," a particular act must constitute a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a

---

[3] The evidence that plaintiff puts forth may include any combination of "evidence establishing the plaintiff's prima facie case", "evidence . . . to attack the employer's proffered explanation for its actions" and "any further evidence of discrimination that may be available to the plaintiff, such as independent evidence of discriminatory statements or attitudes on the part of the employer." *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006); *see also Washington v. Chao*, 577 F. Supp. 2d 27, 39 (D.D.C. 2008).

significant change in benefits."[4] Courts have held that actions such as demotion, undesirable reassignment, or a reduction in salary or benefits qualify as adverse employment actions due to their impact on the terms, conditions or privileges of employment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 808 (1998); *Russell v. Principi*, 257 F.3d 815, 818-19 (D.C. Cir. 2001). However, "not everything that makes an employee unhappy is an actionable adverse action." *Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011) (internal citation omitted).

As explained above, plaintiff has offered eighteen discrete examples of supposedly discriminatory conduct, four of which cannot be considered for failure to exhaust purposes. *See supra* pages 2-4, 6-7. Of the remaining fourteen incidents, plaintiff has failed to demonstrate any materially adverse employment action for ten of them.

Plaintiff was not subject to any significant change in his employment status, nor did he suffer any objectively tangible harm as a result of any of the following incidents: (1) Livack's failure to sign plaintiff's travel voucher in a timely fashion; (2) Livack's threat to get rid of the plaintiff or put him in another line of work because of his inability to travel; (3) in July 2010, Livack's admonishment of plaintiff for failing to track down the original paperwork on a Safety Recommendation project; (4) in August 2010, Livack's lack of response to plaintiff's need for a signature and completion of a project, as well as her failure to acknowledge his presence; (5) in November 2010, Livack's

---

[4] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *see also Mack v. Strauss*, 134 F. Supp. 2d 103, 112 (D.D.C. 2001) (citing *Brown v. Brody*, 199 F.3d 446, 456 (D.C. Cir. 1999)) ("Title VII plaintiffs must demonstrate that an allegedly adverse personnel action had a tangible impact on the terms and conditions of a plaintiff's employment").

failure to acknowledge plaintiff's presence on multiple occasions; (6) on January 6, 2011,

Livack's demand for proof that plaintiff was actually volunteering with the Red Cross;

(7) in January and February 2011, Livack's failure to acknowledge plaintiff's presence;

(8) Livack's demand for an in-person discussion prior to her approval of his request for a

teaching assignment in Oklahoma City; and (9) in May 2011, Livack's failure to approve

a leave slip for the plaintiff. *See Douglas v. Donovan*, 559 F.3d 549, 553 (D.C. Cir.

2009); *Bloom v. McHugh*, 828 F. Supp. 2d 43, 57 (D.D.C. 2011) ("[C]ourts in this district

regularly conclude that personnel actions do not constitute adverse action where the

plaintiff has shown no effect on [her] grade or salary level, job title, duties, benefits or

work hours.") (internal quotation marks and citations omitted) (alteration in original).

Indeed, as plaintiff describes the occurrences, each of the nine "discrete episodes seems

(at worst) akin to the sort of public humiliation or loss of reputation that [our Court of

Appeals has] consistently classified as falling below the requirements for an adverse

employment action." *Baird*, 662 F.3d at 1249.  In addition, our Circuit has made clear

that temporary monitoring, criticism or negative feedback from a supervisor, and delayed

responses from work peers, do *not* amount to adverse employment action absent

accompanying effects on salary or other elements of employment status, which the

plaintiff has not shown here.[5]   Therefore, plaintiff has failed to carry his burden in

demonstrating a materially adverse employment action for these nine events.

---

[5] *See, e.g., Taylor v. Small*, 350 F.3d 1286, 1292-93 (D.C. Cir. 2003) (supervisor's delays
in completing plaintiff's performance evaluations and placement of plaintiff on
Performance Improvement Plan were not adverse employment actions); *Zelaya v.
UNICCO Serv. Co.*, 733 F. Supp. 2d 121, 129-30 (D.D.C. 2010) (finding that the

Similarly, as to the tenth alleged incident, plaintiff suffered no adverse employment action from Livack's admonishment and suspension of plaintiff for the late payment of his government credit card.   The record reflects that plaintiff was suspended for three calendar days, from Wednesday, October 6, 2010 to Friday, October 8, 2010, without pay due to the plaintiff's "failure to pay the balance due on [his] travel card account." Pl.'s Opp'n, Ex. 3 at 3-4.  However, the plaintiff has not shown that this suspension resulted in anything other than a minor inconvenience or temporary reduction in work responsibilities.  *See Arafi v. Mandarin Oriental*, 2012 WL 2021889, *5 (D.D.C. June 6, 2012) (defendant's removal of plaintiff's service during single shift does not constitute adverse employment action); *Harper v. Potter*, 456 F. Supp. 2d 25, 29 (D.D.C. 2006) (holding seven-day suspension was not materially adverse because although it was disciplinary in nature, plaintiff was able to remain on the job and in pay status).

On the other hand, plaintiff has established that the substantive duties of his job were significantly diminished after (1) his government credit card was suspended for late payment, (2) he was removed as Project Manager of the IASDEx program due to his inability to travel, (3) Livack failed to provide him with new substantive assignments, less one administrative task, and (4) his pre-assigned work was reassigned to younger employees. *See* Pl.'s Opp'n, Ex. 4 at 1-2, Ex. 7 at 2, Ex. 8 at 4, 6.  Indeed, if the plaintiff "raise[s] a genuine issue as to whether [a] reassignment left [the employee] with 'significantly different'—and diminished—supervisory and programmatic

---

assignment of an employee to monitor plaintiff was a minor inconvenience that did not rise to the level of adverse action necessary to support a claim).

responsibilities," then the employment action need not entail a loss of salary, grade level, or benefits to be adverse. *Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007); *see also Burkle v. Gould*, 286 F.3d 513, 522 (D.C. Cir. 2002) (holding that the withdrawal of an employee's supervisory duties constitutes an adverse employment action); *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (adverse employment action can be shown via "reassignment with significantly different responsibilities") (citation omitted). Although the plaintiff was not technically reassigned to a different position or location during or as a result of the allegedly discriminatory behavior by the defendant, in effect, he was. *See Mamantov v. Jackson*, 2012 WL 4857781, at *5 (D.D.C. Oct. 15, 2012) ("[A] reassignment of duties may be materially adverse if it places the employee in a position with less responsibility and fewer opportunities for compensation and advancement, or results in the loss of supervisory responsibilities.") (citations and internal quotation marks omitted). In fact, not only does the record reflect that some of plaintiff's previous responsibilities are no longer his, but it demonstrates that plaintiff's duties in the wake of the suspension of his government credit card constitute qualitatively inferior work requiring less skill and knowledge.[6] As such, the substantial deterioration

---

[6] *See* Compl. ¶¶ 41-42 ("On or around June 18, 2010 . . . . Livack told [p]laintiff he is no longer the Program Manager for IASDEx because he could no longer travel for the government."); 67-68 ("On or around September 14, 2010, [p]laintiff discovers that the last two programs he was assigned were reassigned . . . . [p]laintiff is left with only one assignment which has been reduced."), 71-72 ("On or around September 21, 2010, Livack assigned [p]laintiff to set up a storage site . . . . [a]dministrative personnel normally handle this task."); 73 ("Plaintiff worked in the capacity of National Resource Inspector, point of contact for U.S. aircraft abroad complaints and two committee groups, managing an international data share program, and instructing internationally, to, at one point, nothing."); Pl.'s Opp'n, Ex. 4 at 1 ("[plaintiff] was taken out of his position, which

13

of plaintiff's duties constitutes an adverse employment action for purposes of a discrimination claim.[7]

Although the plaintiff suffered an adverse employment action when his job duties were significantly diminished, the defendant has asserted legitimate, non-discriminatory justifications for its actions. The record reflects that the plaintiff was sixty days past due on payment of the entire account balance on his government-issued credit card on three different occasions within a twelve-month period, against FAA policy, and that it was the issuing bank, not the defendant, that initially suspended plaintiff's card due to nonpayment. *See* Pl.'s Opp'n, Ex. 3 at 3; Def.'s Reply in Support of Mot. to Dismiss or, in the Alt., for Summ. J. ("Def.'s Reply"), Exs. 8-9.[8] In addition, the evidence shows that many of plaintiff's program management duties require travel, and that suspension of plaintiff's government credit card consequently prohibited plaintiff from performing some of his inspector duties. *See* Pl.'s Opp'n, Ex. 3 at 3; Ex. 7 at 4; Ex. 8 at 4, 6. As such, the record reflects that reassignment of some of plaintiff's responsibilities was a logistical inevitability, rather than a personal one. Last, Livack's assignment for plaintiff

---

is the Data Sharing Program Manager"), 4 ("I asked another member of my staff to take [plaintiff's] project and he was able to successfully hold the meeting"); Pl.'s Opp'n, Ex. 8 at 3-4.

[7] *See Czekalski*, 475 F.3d at 364-65 (reasonable jury could find that plaintiff suffered an adverse action where evidence showed that plaintiff went from overseeing 260 federal employees, 700 contractors, 50 programs, and a $400 million budget, to overseeing fewer than 10 employees and one program with a minimal budget); *Bibbs v. Bd. of Trustees for Univ. of Ill.*, No. 98-3029, 1999 WL 569028, at *3 (7th Cir. July 30, 1999) (finding significantly diminished responsibilities where plaintiff lost supervisory and coordination responsibilities and was left with phone, filing and scheduling duties).

[8] Indeed, plaintiff personally acknowledged his failure to pay these accounts in a timely manner, and blamed his tardiness on personal issues. *See* Pl.'s Opp'n, Ex. 3 at 4.

14

to set up a storage site for papers, briefs, power points, letters, and statements on the computer system is not wholly administrative, the evidence shows, but is also a technical assignment that requires subject matter knowledge. *See id.*, Ex. 4 at 5.

Unfortunately for the plaintiff, he has presented no evidence to cast doubt on the defendant's nondiscriminatory reasons for its decisions. Instead, plaintiff has presented merely conclusory allegations, without support in the record, that the defendant suspended his government credit card, and substantially reduced his job responsibilities, due to his age. *See Mulhern v. Gates*, 525 F. Supp. 2d 174, 186 (D.D.C. 2007) (unsupported allegations and self-serving, conclusory statements do not create genuine disputes); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (in discrimination cases, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all time with the plaintiff"). In addition, the one-year age gap between the plaintiff and Livack also precludes any accusation that age played a significant role in the defendant's decisionmaking. [9]

Accordingly, the Court finds that no rational jury could find from the existing record that the defendant took the challenged actions on the basis of plaintiff's age. As such, summary judgment on plaintiff's ADEA age discrimination claim against the defendant is appropriate as a matter of law.

---

[9] *See* Pl.'s Opp'n, Ex. 4 at 1, 10; *McNally v. Norton*, 498 F. Supp. 2d 167, 181 n.14 (D.D.C. 2007) (an inference of age discrimination can only be drawn when a plaintiff is treated less favorably than a person who is younger by ten years or more).

### III.    Retaliation Claim under Title VII

Finally, plaintiff claims that the defendant "took adverse action against [p]laintiff by reassigning his duties" after plaintiff met with the EEO Counselor's office and his Division Manager regarding defendant's alleged discrimination against him, in violation of Title VII. Compl. ¶¶ 98-105. The defendant disagrees, arguing that it had a legitimate, non-discriminatory reason for reassigning some of the plaintiff's duties, and that there is no evidence from which a reasonable factfinder could conclude that the defendant's explanation is a pretext for retaliation. *See* Def.'s Mem. at 14-22.

Title VII makes it an unlawful employment practice for an employer "to discriminate against any of his employees . . . because he has opposed any [unlawful employment] practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). Similar to ADEA claims, Title VII claims are assessed pursuant to a burden-shifting framework initially set out by the Supreme Court in *McDonnell Douglas*, 411 U.S. at 802-03. Under that construct, a plaintiff establishes unlawful retaliation under Title VII by showing that "(1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (quoting *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007)); *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007). With regard to the last test, the plaintiff must show that defendant "took the action 'because' [he] opposed the practice." *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012). If the defendant offers a legitimate, non-

16

discriminatory purpose for its disputed actions, however, the burden-shifting framework

dissipates, and a court, on summary judgment, "looks to whether a reasonable jury could

infer retaliation from all the evidence, which includes not only the prima facie case but

also the evidence the plaintiff offers to attack the employer's proffered explanation for its

action and other evidence of retaliation." *Jones*, 557 F.3d at 677 (citations and internal

quotation marks omitted).

In this case, the parties do not dispute that plaintiff engaged in protected activity

by seeking out the EEO Counselor's office in July 2010. And based on the analysis

above, Livack's removal of plaintiff as Program Manager for IASDEx, her failure to

provide plaintiff with new assignments, her reassignment of two programs that were

previously assigned to plaintiff to younger employees, and her assignment to plaintiff to

set up a storage site for papers, briefs, power points, letters, and statements on the

computer system constitute adverse employment actions. *See supra* pages 12-13.

However, even assuming that plaintiff has stated a prima facie case of retaliation

based on the aforementioned series of events, the defendant has asserted a legitimate,

non-discriminatory explanation for its diminishment of plaintiff's job responsibilities, and

plaintiff has completely failed to demonstrate that this justification is a pretext for

retaliation. Because plaintiff has failed to do so here, his retaliation claim is dismissed.

## CONCLUSION

Thus, for all of the foregoing reasons, defendants' motion to dismiss or, in the alternative, for summary judgment is GRANTED.  An appropriate order shall accompany this memorandum opinion.

RICHARD J. LEON
United States District Judge